UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ALFONSO JACKSON, | ) | 3:10-cv–00771-LRH-WGC |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| JOHN DOE, *et al.*, | ) | |
| Defendants. | ) | |

Before the court are the following motions: (1) Plaintiff's Motion Requesting Leave to File an Amended Complaint (Doc. # 34)[1]; (2) Plaintiff's Motion for Leave to File Amended Complaint His Third Request For Enlargement of Time to File his Third Amended Complaint (Doc. # 35); and (3) Defendants' Motion for Enlargement To File Dispositive Motion. (Doc. # 45.)

For the reasons set forth below, the court sets a hearing on Plaintiff's motions (Doc. # 34 and Doc. # 35) for **December 8, 2011 at 1:30 p.m**. As a result, the court will vacate the current dispositive motion deadline, to be reset following the hearing on Plaintiff's motions. Therefore, Defendants' motion (Doc. # 45) is denied as moot.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

### A. Original Complaint (Doc. # 4-1)

On December 9, 2010, Plaintiff brought his civil rights Complaint, alleging that on or

---

[1] Refers to court's docket number.

about December 11, 2009[2], certain "Doe" correctional officer defendants at Ely State Prison (ESP) used excessive force against him during a cell extraction. (Compl. (Doc. #4-1).)

On screening, Plaintiff was allowed to proceed with his excessive force claim under the Eighth Amendment. (Doc. # 4 at 5.) Plaintiff was permitted to conduct limited pre-service discovery for the purpose of ascertaining the identities of the Doe defendants in this matter, and was directed to file an amended complaint to add named defendants if he was able to discovery their identity through this limited discovery. (*Id.*)

**B. First Amended Complaint**

Plaintiff filed his First Amended Complaint on April 11, 2011, naming defendants Chenault, Conner, Kirchen, Lajda, Minnix, Stubbs, and Stroik, and asserting a single count for excessive force in violation of the Eighth Amendment, with allegations that are virtually the same as those contained within the original Complaint. (First Am. Compl. (Doc. # 7).) The First Amended Complaint was screened, and the court found Plaintiff stated a colorable claim for excessive force under the Eighth Amendment against these defendants. (Doc. # 8 at 4.)

**C. Second Amended Complaint**

On May 31, 2011, Plaintiff sought, and was subsequently granted, leave to amend to correct the date of the alleged incident, to name defendant Marshall, who was inadvertently omitted from the court's screening of the First Amended Complaint, and to supplement the factual allegations. (*See* Doc. # 11, Pl.'s Second Am. Compl. (Doc. # 12), Doc. # 13.) The allegations in the Second Amended Complaint were again substantially the same as those contained in the Complaint and First Amended Complaint. (*See* Doc. # 12.) The Second Amended Complaint was screened, and for a third time, the court found Plaintiff stated a colorable claim for excessive force under the Eighth Amendment. (Doc. # 14.)

///

---

[2] Plaintiff later amended his complaint to reflect the true date of the incident, December 10, 2009. (*See* Doc. # 12.)

2

**D.  Defendants' Answer and Scheduling Order (Doc. # 17, Doc. # 22)**

On July 25, 2011, the Office of the Attorney General of the State of Nevada accepted service on behalf of Defendants Chenault, Kirchen, Ladja, Marshall, Stubbs, and they filed their Answer, denying Plaintiff's allegations. (Doc. # 15, Doc. # 17.)[3]

The court issued a Scheduling Order on July 28, 2011, providing that amendments to pleadings under Federal Rule of Civil Procedure 15, motions for leave to amend, or motions to amend the scheduling order shall be filed within sixty (60) days from the date of the Scheduling Order. (Doc. # 22 at 1, 3.) Therefore, the deadline for these motions was September 26, 2011. A showing of good cause is required to file a motion beyond this time limit. (*Id.* at 2.)

**E.  Plaintiff's Motion for Leave to File a Third Amended Complaint and Request for Enlargement of Time (Doc. # 34 and Doc. # 35)**

More recently, on October 3, 2011, Plaintiff filed a motion for leave to file yet another amended complaint (Doc. #34), based on information obtained in discovery, and a motion for a ten (10) day enlargement of time to allow him to file the proposed third amended complaint (Doc. # 35). Defendants have opposed both of Plaintiff's motions on the following grounds: (1) the motions are untimely pursuant to the Scheduling Order and Plaintiff has not made the requisite showing of good cause; (2) Plaintiff failed to comply with LR 15-1 which requires attachment of the proposed amended complaint;[4] (3) permitting amendment would cause undue prejudice because Defendants have been diligent in defending this case; and (4) amendment would cause undue delay. (Doc. # 38 at 2-4, Doc. # 39 at 2-6.)

After close scrutiny and interpretation, the court believes the proposed third amended complaint (Doc. #34-1) seeks to: (1) add three (3) new defendants, ESP Warden Renee Baker

---

[3] The Attorney General did not accept service on behalf of Minnix, Conner, Stroik, who have apparently not been served and have not appeared to date. The court notes Plaintiff recently filed a motion to serve Conner and Stroik by publication. (Doc. # 43.)

[4] The proposed third amended complaint was filed, but apparently not served on Defendants, although Defendants should have received it electronically in a notice of electronic filing. (Doc. # 34-1.)

1  (Count I) and ESP nurses Rosalind Harwell (Count I and Count II) and Eric Szendrey (Count
2  II); (2) add a new cause of action, Count II, for deliberate indifference to his serious medical
3  needs; and (3) supplement the factual allegations in Count I. (*See* Doc. # 34-1.)
4        With respect to Count I, first, Plaintiff seeks to add Nurse Harwell as a defendant,
5  alleging that she stood by and watched the perpetration of excessive force, failing to come to
6  Plaintiff's aid. (Doc. # 34-1 at 9.) Next, it appears Plaintiff seeks to add Warden Baker to
7  Count I, alleging that she gave the officers permission to use excessive force against Plaintiff
8  by failing to supervise them. (*Id.*) Finally, Plaintiff adds additional allegations about the
9  injuries he suffered as a result of the excessive force, including that he will have to take pain
10 medication indefinitely, has to take psychiatric medication to cope with the incident, and
11 requires a special soft diet in connection with his TMJ, which he alleges became worse after
12 the incident. (*Id.* at 10.)
13       While Plaintiff titles Count II of the proposed third amended complaint, "Deliberate
14 Indifference Violation of the Eighth Amendment of the U.S. Constitution to be free from cruel
15 and unusual punishment," a review of the factual allegations leads the court to construe this
16 as a claim for deliberate indifference to a serious medical need under the Eighth Amendment.
17 (*See* Doc. # 34-1 at 11.) Plaintiff includes some repetition of the allegations pertaining to the
18 excessive force claim, and further alleges that after the incident, he requested medical
19 attention for his eye, but was left by Nurses Harwell and Szendrey for ten (10) to eleven (11)
20 hours without treatment or pain medication. (*Id.*) Plaintiff claims he continues to take pain
21 medication and psychiatric medication as a result of the excessive force and denial and delay
22 of medical attention. (*Id.*)

## II. LEGAL STANDARD

24       Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading
25 only with the opposing party's written consent or the court's leave. The court should freely
26 give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied
27 with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th
28 Cir. 2003) (internal quotation marks and citations omitted). Defendants did not consent to

4

the amendment; therefore, Plaintiff must obtain leave of court to file his proposed third amended complaint.

"Leave to amend is generally within the discretion of the district court." *Swanson v. U.S. Forest Service*, 87 F3d 339, 343 (9th Cir. 1996) (citation omitted). "In exercising its discretion 'a court must be guided by the underlying purpose of Rule 15-to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). While leave to amend should be freely given when justice requires, leave need not be granted where there is: (1) undue delay; (2) bad faith or dilatory motive on the part of the moving party; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; or (5) futility of amendment. *Foman v. Davis*, 371 US 178, 182 (1962); *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted); *Eminence*, 316 F.3d at 1052 (citations omitted). Another factor used by courts is whether the plaintiff has previously amended the complaint. *DCD Programs*, 833 F.2d at n. 3. "Not all of the factors merit equal weight." *Eminence*, 316 F.3d at 1052 (citing *DCD Programs*, 833 F.2d at 185). "Prejudice is the touchstone of the inquiry under rule 15(a)." *Id.* (internal quotation marks and citations omitted). "[D]elay, by itself, is insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186 (citations omitted). In fact, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence*, 316 F.3d at 1052 (citations omitted) (emphasis original).

### III. DISCUSSION

**A. Timeliness**

Where a case management scheduling order sets a deadline for amending pleadings and the deadline has passed, as herein, the liberal policy regarding amendment of pleadings set forth in Federal Rule of Civil Procedure 15 no longer applies. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). To allow the amendment, the scheduling order must be modified and this requires leave of court and a showing of "good

5

1 cause." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

### 1. Technical Noncompliance with Scheduling Order

As noted above, the Scheduling Order required any motion for leave to amend, or motion to amend the scheduling order, to be filed on or before September 26, 2011. (*See* Doc. # 22.) Plaintiffs motions dated September 28, 2011 and filed on October 3, 2011, are untimely. Therefore, to be able to proceed, Plaintiff must first demonstrate good cause for failing to file the motion for leave to amend, or motion to amend the scheduling order, within the period of time set forth in the Scheduling Order.

The court must keep in mind Plaintiff's status as a pro se inmate litigant. While courts construe pro se pleadings liberally, the Ninth Circuit has held that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987); *see also Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (per curiam); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th cir. 1995) (per curiam). However, "'strict time limits…ought not to be insisted upon' where restraints resulting from a pro se prisoner plaintiff's incarceration prevent timely compliance with court deadlines." *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987) (citation omitted); *see also McGuckin v. Smith*, 974 F.2d 1050, 1058 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Moreover, the Ninth Circuit has held that if the record allows the court to determine the date the filing was turned over to prison authorities, the court can apply the ruling in *Houston v. Lack*, 487 U.S. 266, 260 (1988), that the document is deemed filed on the date it was delivered to the prison for forwarding to the court. *See Caldwell v. Amend*, 30 F.3d 1199, 1201 (9th Cir. 1994) (applying rule to deadline for filing motion under Federal Rule of Civil Procedure 50(b)); *see also Douglas v. Noelle*, 567 F.3d 1103, 1108-09 (9th Cir. 2009) (holding that mailbox rule of *Houston v. Lack* applies to § 1983 suits).

Plaintiff attributes the delay in serving and filing his motions to the policies and procedures of ESP regarding the copying and mailing of inmate litigation documents. (*See* Doc. # 35, Doc. # 41.) He claims that he asked ESP to make copies of the documents on

6

1 September 25, 2011, expecting to get them back the next day. (*Id.*) He did not receive them, however, until September 28, 2011, when he delivered the documents for mailing. (*See* Doc. # 41 at 1-4.)

In light of these facts, the court cannot make a finding in favor of Plaintiff under *Houston v. Lack* because Plaintiff did not even submit his copies to prison authorities until September 25, 2011, and admits he did not expect to get the copies back until the date the filing was due, September 26, 2011. While the court appreciates Plaintiff's frustration with the ability to get his documents copied and in the mail for filing, a review of the documents filed by Plaintiff in this case leads the court to believe Plaintiff is familiar with NDOC's policies and practices for copying and mailing litigation documents. Plaintiff should have taken care to submit his documents for copying and mailing with sufficient time to comply with the Scheduling Order.

**2. Lack of Diligence in Seeking Leave Earlier**

"[E]ven under the liberal Rule 15 standard 'late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (quoting *Acri v. Intn't Ass'n of Machinists and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)). What concerns the court more than Plaintiff's technical noncompliance with the Scheduling Order, and what the court would like Plaintiff to address at the hearing on his motions, is Plaintiff's apparent lack of diligence in seeking leave to amend earlier, and the fact that Plaintiff now seeks to pursue a cause of action based essentially on the same operative factual scenario as were his first three complaints.

The substance of Plaintiff's initial complaint, and the two subsequent iterations, is that plaintiff was subjected to excessive force when he was extracted from his cell on December 10, 2009. (Doc. # 4-1, Doc. # 7, and Doc. # 12.) Notably, Plaintiff's initial pleadings were devoid of any allegation or suggestion that as a consequence of the incident involving excessive force, he experienced deliberate indifference to a serious medical condition. Plaintiff would have been aware at the time he filed his original Complaint in December 2010, one

7

year after the incident, and at the time he filed his First and Second Amended Complaints, in April and May, 2011, that he perceived a denial or delay in the medical care he received (or did not receive) as a result of the incident on December 10, 2009.

While Plaintiff may not have been aware of the identity of the nurse defendants who treated him, if he was denied medical care by certain staff of the facility, he certainly was aware of that well before the time he filed these motions. As Defendants noted in their opposition, while in litigation, Plaintiff has the ability to review his medical records, and therefore he could have reviewed them to ascertain the identity of those who he believes were deliberately indifferent to his serious medical need. (*See* Doc #39 at 2.) Moreover, the court notes that Plaintiff's initial complaint for alleged excessive force was lodged against numerous "Doe" defendants. (Doc. #4-1 at 2-3.) If Plaintiff's medical care was denied or delayed at or around the time of the excessive force incident, but Plaintiff was unaware of the medical personnel who denied him medical attention, Plaintiff could have similarly asserted a separate cause of action for deliberate indifference to his serious medical needs against fictitious parties. In fact, the Screening Order on his original Complaint set forth this procedure, in some detail, for Plaintiff. (*See* Doc. # 4 and the authorities cited therein.)

While Plaintiff asserts that he obtained the new information through pretrial discovery (Doc. # 34 at 1), he does not describe *what* discovery it was that supposedly alerted him to the identity of the warden and nurses who he now claims violated his constitutional rights, or *when* those revelations came to light.

In sum, the court is concerned with the prospect of allowing amendment because it appears that Plaintiff had plenty of opportunities from the time he filed his original Complaint in December 2010, up until September 26, 2011, to seek leave to include a claim for relief predicated on the alleged deliberate indifference to his serious medical needs which arose out of the same operative facts as the excessive force claim.

**B. Previous Amendment**

The amendment plaintiff seeks to effect would represent his fourth in his series of pleadings. The court's discretion to deny an amendment is more broad when the court has

8

1 previously afforded the party the opportunity to amend. *DCD Programs*, 833 F.2d at 186;
2 *Lee v. SmithKline Beecham*, 245 F.3d 1048 (9th Cir. 2001). Plaintiff should be prepared to
3 address this factor at the hearing.

**C. Delay**

If Plaintiff were to be granted an opportunity to effect this last minute amendment, a crescendo of events and deadlines would occur, and it appears the case will obviously be delayed. First, the new defendants would have to be served. In that regard, therefore, at the hearing on Plaintiff's motions, the parties should be prepared to discuss whether the proposed defendants are current or former NDOC employees, and the length of time it may take to effectuate service on these individuals, if amendment were allowed.

After service, a new scheduling order with revised deadlines would have to be implemented with respect to discovery and dispositive motions. The parties should be prepared to discuss what discovery remains to be done in the case as it currently stands, if any, what additional discovery would need to occur if amendment is permitted, and an approximation of the timing for any extension of the discovery and dispositive motion deadlines. The court assumes the current deadlines would have to be pushed out at least six (6) months.

**D. Prejudice**

The court notes Defendants claim prejudice (Doc. #39 at 4), but other than their having worked on a dispositive motion and answered discovery, significant prejudice does not appear to exist herein. Defendants should be prepared to specifically address how they would suffer *undue* prejudice in the event amendment is permitted.

**E. Bad Faith**

While there is no brightline definition of "bad faith," the court discussed above its concern about the last minute addition of a new cause of action, the factual predicate of which was not referenced in three prior recitations of the factual background of this matter.

Another possible indicator of bad faith is that it appears from the documentation Plaintiff attached to his proposed third amendment complaint that there was no mention of

a denial or delay of medical care claim in the grievance documents submitted to the prison. (Doc. # 34-1 at 16-31.) The absence of any prior suggestion of an alleged deliberate indifference to a serious medical need is important to the analysis of the bad faith element of the proposed amendment. Thus, Plaintiff should be prepared to address why the delay or denial of medical care was not raised in the grievance documentation, or, if he claims it was, Plaintiff should file a brief supplement to his motion in advance of the hearing providing properly authenticated documentation to support this argument that has not already been provided to the court.[5]

**F. Futility**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation 740.

While Defendants would ultimately bear the burden of pleading and proving the failure to exhaust, *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), as stated above, it appears from the face of the proposed third amended complaint that Plaintiff did not grieve this issue, which would make amendment futile as far as the addition of a new claim for deliberate indifference to serious medical claim is concerned.[6]

Therefore, Plaintiff should be prepared to address his apparent failure to exhaust his administrative remedies with respect to the claim of deliberate indifferent to his serious medical needs. As with the bad faith factor, if Plaintiff has additional documentation that was not attached to his proposed third amended complaint that supports an argument that he did

---

[5] Properly authenticated means that Plaintiff should submit a declaration under penalty of perjury stating that any documents he submits in support of his motion are true and correct.

[6] The exhaustion issue does not affect the analysis of Plaintiff's request to add Warden Baker and Nurse Harwell to Count I. Nor does it affect the request to supplement the allegations in Count I.

properly exhaust, he is to file a brief supplement to his motion in advance of the hearing including properly authenticated evidence.

**G. Statute of Limitations**

Plaintiff should be aware that if the court declines to permit further amendment of this action, and if Plaintiff believes he can overcome the exhaustion hurdle with respect to the deliberate indifference claim, the statute of limitations on claims brought under § 1983 is two years. *See Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000)(citation omitted); Nev. Rev. Stat. § 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989). In the absence of a tolling period while Plaintiff completed the grievance process, it appears the statute of limitations would run on December 10, 2011.

## IV. CONCLUSION

**IT IS ORDERED** that the current dispositive motion deadline is **VACATED**, to be reset following the hearing on Plaintiff's motions. Therefore, Defendants' motion (Doc. # 45) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that a hearing is set for Plaintiff's motions (Doc. # 34 and Doc. # 35) on **December 8, 2011 at 1:30 p.m**., at the United States District Court for the District of Nevada, unofficial Northern Division, Courtroom 2 before the Honorable William G. Cobb, United States Magistrate Judge. The Office of the Attorney General shall arrange for the Plaintiff to be present by telephone and shall contact the courtroom administrator, Jennifer Cotter, at (775) 686-5758, at least two (2) days prior to the hearing to advise her of the number where Plaintiff may be reached at the time of the hearing. The parties should be prepared to address the following topics:

(1) **Timeliness:** Plaintiff's apparent lack of diligence in seeking leave to amend earlier, including: (a) the fact that there is no suggestion in the original, First, or Second Amended Complaint that Plaintiff sought to pursue a claim for deliberate indifference to his serious medical need; (b) he did not use the mechanism of naming fictitious parties if he was aware of this claim; (c) *what* discovery alerted him to the identity of the warden and nurses and the deliberate indifference claim and *when* those revelations came to light;

11

1      (2) **Previous Amendments**: Plaintiff did not seek to include these additional
2 defendants and allegations in his previous amendments;

3      (3) **Delay of Litigation**: (a) whether the proposed defendants are current or former
4 NDOC employees, and the length of time it may take to effectuate service on these
5 individuals, if amendment were allowed; and (b) what discovery remains to be done in the
6 case as it currently stands, if any, what additional discovery would need to occur if
7 amendment is permitted, and an approximation of the timing for any extension of the
8 discovery and dispositive motion deadlines;

9      (4) **Prejudice**: Defendants should be prepared to discuss the *undue* prejudice they
10 will suffer if amendment is permitted;

11      (5) **Bad Faith**: the absence of any prior suggestion of deliberate indifference in the
12 previous pleadings or grievances attached to this proposed amendment; and

13      (6) **Futility**: his apparent failure to exhaust his administrative remedies with respect
14 to the claim that Nurses Harwell and Szendrey were deliberately indifferent to his serious
15 medical need.

16 **IT IS SO ORDERED.**

18 DATED:   November 17, 2011

_____
UNITED STATES MAGISTRATE JUDGE

12